Jessie Lacy v. The State.

No. 9020.     Delivered Feb. 4, 1925.

Manslaughter—Unintentional Killing—Failure to Charge on—Error.

Where on a trial for murder, the appellant testified that the killing was unintentional on his part, and his testimony is corroborated to a certain extent by declarations of the deceased, it was error for the trial court to refuse to submit the issue of an unintentional killing to the jury in an affirmative way.

Appeal from the District Court of Collingsworth County.   Tried below before the Hon. R. L. Templeton, Judge.

Appeal from a conviction of manslaughter; penalty, five years in the penitentiary.

The opinion states the case.

*R. H. Cocke, Jr.,* of Wellington, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—Appellant was indicted for murder and convicted of manslaughter; punishment fixed at confinement in the penitentiary for a period of five years.

The dying declaration of the deceased was introduced, in which it was stated that she was the wife of the appellant; that on the morning of the tragedy, she asked him to return to her the sum of $4.80 which he had taken from her; that he refused to do so, and said he would kill her; that this was a good time to do so and struck her with a long-bladed knife, inflicting wounds from which she afterwards died.   The wound was inflicted in the abdomen and permitted some of the intestines to protrude.   According to the doctors, the wound was not necessarily fatal, but due to complications, death finally resulted.

At the time the declaration was made and reduced to writing, the serious nature, or at least, the fatal nature, of the wound had not been ascertained.   However, after it was ascertained, and after the deceased became aware of the impending death, she stated that she had no change to make in the statement she had previously made, which was produced and exhibited to her.   According to the witnesses who attended her, during her illness, which lasted for several days, she made statements to the effect that the wound was not intentionally inflicted.   To one of these witnesses she said that the appel-

lant did not mean to cut her, to another she said that she made him do it, and that after cutting her, he said he would get a doctor. She requested another witness to go to the jail and tell the appellant that she had no ill-feeling towards him; that she knew he did not intend to cut her; that if she lived, she would help him all she could. To another witness she said that appellant did not intend to cut her, that he would not have cut her so badly if she had not run on him.

Appellant testified that he and his wife had often quarrelled; that she had cut him with a knife on several occasions; that they had separated and been reconciled several times; that he was leaving for his work early in the morning and took some clothe. with the intention of taking them to be pressed. She objected to his doing so, and a scuffle ensued, both of them having hold of the clothes, or some of them. She picked up a knife and started towards the appellant when he retreated, backing. He opened his knife and she plunged at him, and in doing so, she came in contact with the knife which struck her in the side. He said he had no intention of cutting her, but was only bluffing.

The State introduced some witnesses who heard part of the declaration of the deceased at the time of the occurrence, where testimony is inconsistent with the theory of the appellant as revealed by his evidence.

The court instructed the jury on the law of murder, manslaughter and self-defense; also on the law of threats made by the deceased.

In the 23rd paragraph of his charge the court defined a deadly weapon, and told the jury that the knife was not of itself a deadly weapon, but its character was such that this might be determined from the manner of its use; that where such weapon is used, unless the intention to kill appeared, it would not be presumed. In connection with that theory, the court charged upon the law of aggravated assault. An exception to othe charge was reserved because it omitted the appellant's defensive theory arising from the evidence of accidental cutting, and in addition to the exception, appellant requested a charge, while not accurate, it emphasized the failure to instruct upon that issue and requested that the jury be told that if the cutting as unintentional, there should be an acquittal. This issue apparently having arisen from the appellant's testimony and from the evidence introduced sowing the declarations of the deceased antedecent to her death, we are impressed with the view that the learned trial judge was not warranted in refusing to amend his charge so that the issue of unintentional cutting might be submitted to the jury in an affirmative manner. Authorities in point are Miller v. State, 52 Texas Crim. Rep., 72; McPeak v. State, 80 Texas

Crim. Rep., 50, and cases there cited. See also Whiten v. State, 160 S. W. Rep., 462.

Because of the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*