COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




JORDAN RAY KNEUPPER,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00399-CR



Appeal from the


112th Judicial District Court


of Upton County, Texas 


(TC# 03-12-U766-AST) 



O P I N I O N

 Jordan Ray Kneupper appeals his conviction for aggravated assault with an affirmative
deadly weapon finding. A jury found him guilty and assessed punishment at 8 years in prison
and a $5,000 fine. The two issues raised here are that the evidence is factually insufficient to
support his conviction and that the trial court erred in excluding evidence of the victim's hostility
towards him one year after the shooting. We affirm.

 On July 18, 2003, the seventeen-year-old Appellant spent the afternoon with a longtime
friend, Mark Baker, in Appellant's house in McCamey, Upton County, Texas. They drank beers
that Mr. Baker's older cousin bought for them.

 Later, the two meet A. Z., sixteen, her younger brother, Anthony Z., fourteen, R. A.,
fifteen, and J. V., sixteen, at the car wash and all six returned to the house that Appellant shared
with his cousin, Michael Pool.

 As the teens watched a pornographic video, Mr. Baker was lying on a sofa beside or with
his head on A. Z.'s lap. Appellant and Mr. Baker began "joking" about whose penis was bigger. 
After about five to ten minutes of boasting, Appellant exposed his penis to Mr. Baker and A. Z. 
Mr. Baker told Appellant that nobody wanted to see his "pencil dick." Angered, Appellant went
into his cousin's bedroom and returned with a 16-gauge shotgun. As he left the living room to
get the shotgun, Appellant told Mr. Baker something to the effect that he had something bigger.
Appellant walked up to where Mr. Baker was laying, aimed the shotgun within a few inches of
Mr. Baker's groin, and the shotgun discharged.

 Mr. Baker suffered serious injuries as a result of the shooting and spent twenty-one days
in the hospital. His bladder was heavily damaged, and he had a colostomy for four months. His
rectum and small intestine were damaged. He lost his left testicle, and his penis was severed in
two places. Mr. Baker has also been treated for erectile dysfunction.

 Appellant was indicted on one count of aggravated assault and one count of aggravated
assault with a deadly weapon. At trial, the only question before the jury was whether Appellant
had possessed a culpable mental state at the time of the shooting. Appellant did not testify at the
trial, but the jury saw a video interview of Appellant conducted by Upton County Sheriff's
Deputy Todd Helms immediately after the shooting. In the video, Appellant stated that he had
removed the gun from its case, set it on his cousin's bed, and that it had fallen onto the bedroom
floor. Appellant stated he did not think his cousin would ever keep a loaded gun in the house,
but that he brought it out to the living room to show it to Mr. Baker when it suddenly discharged. 
Appellant also told Deputy Helms that he was fairly experienced with shotguns and rifles and
that he regularly went varmint hunting with his father. A written statement Appellant gave to
Deputy Juan Jimenez, Jr. on the day after the shooting was also admitted into evidence. In the
statement, Appellant claimed that he was just showing the shotgun to Mr. Baker, not knowing the
gun was loaded, when it suddenly discharged.

 Deputies Jimenez and Helms were the first law enforcement officers to arrive at the scene
and they both testified that their initial understanding was that the shooting was accidental. 
Officer Jimenez further testified that Appellant, Mr. Baker, and A. Z. all told him the shooting
was an accident. Mr. Baker himself testified that he initially thought the shooting had been
accidental.

 At the trial, however, Mr. Baker testified that he saw Appellant pull back the hammer of
the shotgun and pull the trigger. None of the four other witnesses testified that they saw him
cock the hammer or pull the trigger. Upton County Sheriff Dan Brown testified that although no
fingerprints could be retrieved from either the trigger or hammer of the shotgun, a test conducted
on the night of the shooting revealed traces of metal on Appellant's left hand as well as on the
thumb and index finger on his right hand, which were places Appellant would have touched
metal in order to hold, cock, and fire the shotgun. Sheriff Brown also testified that the shotgun
had a hair trigger, but that the hammer would not have been cocked by simply taking the shotgun
out of its zippered case.

 Appellant's defensive theory was that the shooting had been a tragic accident, and that
Mr. Baker's perception of the incident changed over time, from accidental to intentional, as he
grew increasingly hostile towards Appellant. To that end, Appellant sought to present evidence
of an encounter between him and Mr. Baker that occurred one year after the shooting during
which Mr. Baker had allegedly made threatening gestures toward Appellant as they drove down a
street in Odessa, Texas. This consisted mainly of the testimony of Amanda Kneupper,
Appellant's wife, who was present at that encounter. Her testimony contradicted Mr. Baker's,
who admitted that the encounter had occurred but denied having made any threatening gestures
towards Appellant. The trial court refused to admit such evidence on grounds that it had
occurred after the fact and was irrelevant.

Standard of Review

 In reviewing the factual sufficiency of the evidence, we must determine whether,
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt
beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004),
overruled on other grounds by Watson v. State, 204 S.W.3d 404 (Tex.Crim.App. 2006). 
Evidence can be factually insufficient if the evidence supporting the verdict, considered by itself,
is too weak to support the finding of guilt beyond a reasonable doubt, or contrary evidence is so
strong that guilt cannot be proven beyond a reasonable doubt. Id. at 484-85. Our evaluation,
however, should not intrude upon the fact finder's role as the sole judge of the weight and
credibility given to any witness's testimony. See Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997). We will not set aside the judgment unless the evidence supporting the
verdict is so weak as to be clearly wrong and manifestly unjust. Zuniga, 144 S.W.3d at 481. A
clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the
conscience" or "clearly demonstrates bias." Id. An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports the Appellant's
complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

 We review a trial court's ruling to admit or exclude evidence under an abuse of discretion
standard. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991)(Op. on reh'g). An
abuse of discretion exists when the trial court's decision was so clearly wrong as to lie outside
the zone of reasonable disagreement; in other words, the trial court's decision or action was
arbitrary, unreasonable, and made without reference to any guiding rules or principles. Id. Texas
Rules of Evidence 402 states that all relevant evidence is admissible. Tex.R.Evid. 402.

ISSUE NUMBER ONE

 In Issue One, Appellant asserts that the evidence offered by the State at trial is factually
insufficient to establish that Appellant committed the offense of aggravated assault. Appellant
argues that considering the evidence of Appellant's guilt in light of all of the evidence, the jury
verdict is clearly wrong and unjust. We find otherwise. The elements of aggravated assault are:
(1) a person; (2) intentionally, knowingly or recklessly; (3) commits an assault that either; (4)
causes serious bodily injury; or (5) is effected by use of a deadly weapon. Gonzales v. State, 762
S.W.2d 583, 585 (Tex.Crim.App. 1988). There is no dispute that Appellant pointed a deadly
weapon at Mr. Baker, that the weapon discharged, or that Mr. Baker suffered serious bodily
injury as a result. Thus, the only contested element of the offense was Appellant's state of mind
at the time of the shooting. A finding of recklessness is thus sufficient to support his conviction.

 Our courts have held that the act of knowingly pointing a firearm at another may, in and
of itself, constitute reckless conduct. Thomas v. State, 699 S.W.2d 845, 850 (Tex.Crim.App.
1985). This is especially true when committed by someone familiar with guns and their potential
for injury. Id. The statute setting out the elements of deadly conduct presumes that an actor was
reckless if he knowingly pointed a firearm at or in the direction of another, whether or not he
believed the firearm to be loaded. Tex.Pen.Code Ann. § 22.05(c)(Vernon 2003). "While the
statute setting out the elements of aggravated assault does not include a special subsection
describing the presumption that recklessness may be inferred from the act of pointing a gun at a
person's head, it would defy logic--and the canons of statutory construction--to assume that the
legislature intended such a statutory presumption to apply to the lesser, but not the greater,
offense when both require exactly the same 'reckless' mental state." Guzman v. State, 188
S.W.3d 185, 193 (Tex.Crim.App. 2006). This presumption allows a jury to infer recklessness
from proof, beyond a reasonable doubt, that the defendant pointed a firearm at another person. 
Id.

 Five witnesses testified that Appellant pointed the shotgun at Mr. Baker immediately
before it was discharged. With such testimony, the jury's finding that Appellant pointed the
shotgun at Mr. Baker does not shock the conscience or clearly demonstrate bias so as to make the
verdict clearly wrong and manifestly unjust. Zuniga, 144 S.W.3d at 481. Four witnesses
testified that Appellant made threatening comments as he approached Mr. Baker which was in
response to Mr. Baker's derogatory comment about the size of Appellant's penis. Appellant also
told Deputy Helms that he was experienced and proficient with shotguns. Such evidence is
factually sufficient to prove, beyond a reasonable doubt, that Appellant knew he was pointing the
shotgun at Mr. Baker's groin when it was discharged. The only evidence that might be construed
to contradict Appellant's knowledge of where the gun was pointed are his own vague statements
that he was simply showing the gun to Mr. Baker when it "just went off" and "hit him in the
private area." Any ambiguity in such self-serving statements does not constitute contrary
evidence so strong as to make the jury's finding shocking or clearly biased. Zuniga, 144 S.W.3d
at 481. Therefore, we conclude the evidence is factually sufficient to sustain Appellant's
conviction. Issue One is overruled.

ISSUE NUMBER TWO

 In Issue Two, Appellant asserts that the trial court erred when it declined to let Appellant
present evidence through his wife of a hostile encounter with the victim. Appellant argues that
his wife's testimony about Mr. Baker's state of mind was relevant to the case's issues and its
importance was such that the failure to allow such evidence clearly harmed Appellant. More
specifically, Appellant argues that the testimony concerning his encounter with Mr. Baker in July
of 2004 was relevant to support his defensive theory that Mr. Baker's perception of the shooting
changed, from accidental to intentional, as he grew increasingly hostile towards Appellant.

 Appellant is correct that evidence need not by itself completely prove or disprove a
particular fact to be relevant, as long as it provides a small nudge toward proving or disproving a
fact of consequence. Montgomery, 810 S.W.2d at 376. However, it is not our role to intercede a
trial court's ruling as long as it was at least within the zone of reasonable disagreement. Id. at
391. Amanda Kneupper's testimony might be relevant to show that Mr. Baker was hostile
towards Appellant and to support his theory that Mr. Baker's anger clouded his perception of the
events that occurred on the night of the shooting. However, proof that Appellant intentionally
pointed a gun at Mr. Baker is sufficient, standing alone, to establish Appellant's recklessness and
that was the only fact of consequence at the trial. Four other witnesses besides Mark Baker
testified to that effect. The relevance of Mrs. Kneupper's testimony, if at all, was within the zone
of reasonable disagreement, and it was within the trial court's discretion to exclude it.

 Even if Amanda Kneupper's testimony were relevant, we would still find that the error
was harmless. An appellate court must reverse a judgment of conviction or punishment unless
the court determines beyond a reasonable doubt that error did not contribute to the conviction or
punishment. See Tex.R.App.P. 44.2(a). Under this harm analysis, we calculate as much as
possible the probable impact of the error on the jury in light of the existence of other evidence. 
Wesbrook v. State, 29 S.W.3d 103, 119 (Tex.Crim.App. 2000), citing Harris v. State, 790
S.W.2d 568, 587 (Tex.Crim.App. 1989). While the most significant concern must be the error
and its effects, the presence of overwhelming evidence supporting the finding in question can be
a factor in the evaluation of harmless error. Wesbrook, 29 S.W.3d at 119; see also Harris, 790
S.W.2d at 587-88.

 Here, Amanda Kneupper's testimony would at most have supported Appellant's
argument that Mr. Baker became angry and hostile towards him after he shot Mr. Baker in the
groin. The jury clearly had evidence from which to derive such a conclusion. Mr. Baker himself
testified that he had hard feelings towards Appellant and that he no longer considered Appellant a
friend. Dr. Razzak Jabur testified that Mr. Baker suffered serious and permanent injuries to his
bladder, penis, scrotum, testicles, small intestine, and rectum. Furthermore, Mr. Baker's
testimony was substantially corroborated by the four other witnesses to the shooting. Any error
in excluding Mrs. Kneupper's testimony regarding Mr. Baker's hostility towards Appellant one
year after the shooting was not such that a jury would be moved from a "state of nonpersuasion
to one of persuasion as to the issue in question." Wesbrook, 29 S.W.3d at 119, citing Jones v.
State, 833 S.W.2d 118, 127 (Tex.Crim.App. 1992), cert. denied, 507 U.S. 921, 113 S.Ct. 1285,
122 L.Ed.2d 678 (1993).

 In our harm analysis, we find that the jury would have probably placed little weight on the
alleged error and we do not think that a rational trier of fact would have reached a different result
if the error had not occurred. See Harris, 790 S.W.2d at 588. Furthermore, recognizing that
overwhelming evidence of guilt is a factor to be considered, we conclude beyond a reasonable
doubt that the exclusion of the testimony of Amanda Kneupper did not contribute to Appellant's
conviction or punishment. Id. Issue Two is overruled.

 Having overruled both of Appellant's issues, we affirm the trial court's judgment.




November 1, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)